UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00368-TWP-MG-2 |
| | ) | |
| SUBTAIN RAJA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

This matter comes before the Court on Defendant Subtain Raja's ("Mr. Raja") Motion to Dismiss Indictment for Violation of the Defendant's Right to Due Process (Filing No. 83). The Court ordered Mr. Raja to the custody of the U.S. Attorney General pursuant to 18 U.S.C. § 4241(d)(1) on August 25, 2022 (Filing No. 71). To date, Mr. Raja has not been moved into the custody of the Attorney General and remains in the Clinton County, Indiana jail. Following a status conference held on February 15, 2023 (*see* Filing No. 87-2), Mr. Raja moved for dismissal of the Indictment on March 22, 2023, based on this failure to transport. The Government responded to the Motion on April 4, 2023 (Filing No. 87), and the Motion is now ripe for the Court's ruling. For the following reasons, the Court **denies** the Motion, but **orders** the Government to comply with its Order (Filing No. 71 at 7) within 30 days.

## I. BACKGROUND

On December 14, 2021, Mr. Raja was indicted by a federal grand jury on Count 1: Possession with Intent to Distribute Controlled Substances and on Count 3: Carrying a Firearm During and in Relation to a Drug Trafficking Crime (Filing No. 1). The Government asked the Court for pretrial detention under 18 U.S.C. § 3142 (Filing No. 15). The Magistrate Judge found

by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, therefore it was determined that Mr. Raja should be detained. (Filing No. 38.) The reasons for detention included:

> The weight of evidence against the defendant is strong;
> Prior criminal history;
> History of violence or use of weapons;
> Lack of stable employment;
> Lack of stable residence;
> Lack of significant community or family ties to this district; and
> Significant family or other ties outside the United States.

*Id.* at 2-3

The Government's motion for pretrial detention was granted on March 24, 2022 (Filing No. 38). As the case progressed, Mr. Raja moved to continue (Filing No. 40), or did not oppose his co-defendant's motion to continue (Filing No. 53), the scheduled trial dates in the case. Eventually, trial was scheduled for November 7, 2022 (Filing No. 54).

On May 27, 2022, Raja moved for a psychological evaluation to determine his mental competency to understand the nature and consequences of the proceedings against him, or to assist properly in his defense (Filing No. 55). The Court issued an Order (Filing No. 56) and then an Amended Order (Filing No. 58) for Raja's psychological examination pursuant to 18 U.S.C. § 4241(b). On August 18, 2022, Jessica Micono, Psy.D., Forensic Psychologist at the Federal Medical Detention Center, Englewood, Colorado, produced a report opining that Mr. Raja was not competent to stand trial and assist his attorney in his defense (Filing No. 67 at 18).

Following a competency hearing, the Court found by a preponderance of evidence that Mr. Raja was suffering from a mental disease or defect rendering him incompetent to stand trial (Filing No. 71 at 7). Pursuant to 18 U.S.C. § 4241(d)(1), Mr. Raja was committed to the custody of the "Attorney General or his designee hospitalize Raja for treatment in a suitable facility for a

reasonable period of time, not to exceed four (4) months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.*

On January 11, 2023, Mr. Raja requested a status conference because he had not yet been transported (Filing No. 79). The Court, in response, inquired with the U.S. Marshal Service and was assured that Mr. Raja was due for transport on an imminent date certain (Filing No. 80). On January 31, 2023, the Court was informed that Mr. Raja was not transported on the scheduled date (*see* Filing No. 87-1), and the Court ordered a status conference be set for February 15, 2023 (Filing No. 81).

At the status conference, Deputy Marshal Gregg Thiel informed the Court that there are only three institutions run by the Bureau of Prisons ("BOP") currently able to accept the transfer of defendants for treatment under § 4241(d)(1) (Filing No. 87-2 at 3). Deputy Marshal Thiel stated that a waiting list for acceptance by the BOP was causing his lack of transfer, that Mr. Raja was "currently number 22 on the list" to be moved, had "only moved up a couple of spots in the last couple of weeks," and that he did not know when he would be moved. *Id.*

The Government submitted along with its response to the Court a sworn declaration from Dia Boutwell, Ph.D. ("Dr. Boutwell"), the Chief of the Psychological Evaluations Section for BOP (Filing No. 87-3). Dr. Boutwell stated that BOP now has five facilities offering competency restoration treatment as two additional facilities have recently begun such services. *Id.* at 2. Mr. Raja is assigned to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri for his treatment, and Dr. Boutwell's estimation of his admission date is November 2023. *Id.* at 3. Dr. Boutwell explained that wait times to enter these facilities are caused by a limitation on the capacity of these facilities to a specific number of beds for treatment based on the availability of

3

staff including "psychologists, psychiatrists, nurses, social workers, and correctional staff" and that adequate personnel are required for the safety of staff and inmates. *Id.* at 2–3. She stated that transfers are prioritized based on the date of the order, and earlier admission would occur only where "the defendant is experiencing severe medical or psychological decompensation." *Id.* at 3. Dr. Boutwell noted that where a defendant is moved up the list due to their condition, another defendant is inexorably moved down one spot. *Id.* Based on Dr. Boutwell's review of his condition, Mr. Raja is not currently experiencing such a decompensation. *Id.* at 3–4.

## II. DISCUSSION

Mr. Raja filed a Motion to Dismiss Indictment arguing that his due process rights have been violated because he has been held for (at the time of filing the Motion) 206 days, which is well over the four-month maximum time in custody for a determination on the possibility of restoration under the Insanity Defense Reform Act ("IDRA") and 18 U.S.C. § 4241. He stated that while he has been held in the Clinton County Jail, the Attorney General has made no effort to comply with the IDRA. He pointed to *United States v Leusogi*, 2022 WL 16855426 (D. Utah Nov. 10, 2022), in which the district court granted the defendant's motion to dismiss under similar facts.[1]

While conceding that Mr. Raja's wait in jail has been significant, the Government argues that the lengthy delay is not unwarranted given the likelihood of restoration established in the record and the constraints faced by the BOP in accommodating defendants from across the country. The Government further contends that there has, in fact, been diligent work done to bring Mr. Raja into the appropriate facility demonstrated by the BOP opening two new facilities with restoration

---

[1] Mr. Raja also points to a Seventh Circuit case in which he claims this issue was raised. *See United States v. Shawar*, 865 F.2d 856 (7th Cir. 1989). That case, however, addressed the discretion a district court judge has in determining whether to commit a defendant found incompetent into the custody of the Attorney General. *Id.* at 859. The court determined that the statute gave district courts no such discretion and remanded with instructions to commit the defendant in accordance with the IDRA and noted that the district court had improperly dismissed the indictment. *Id.* at 864. That issue is not applicable to the requested relief in Mr. Raja's Motion.

4

services. The Government claims that Mr. Raja has contributed to his total time in custody by twice seeking continuances of the trial date. The Government notes that Mr. Raja also is held under the Bail Reform Act, which constitutes an independent basis for his detention. Lastly, the Government argues that dismissal would be unduly harsh as the Court has imposed no deadline in any prior Order, and other courts have found dismissal to be an inappropriate remedy.

Section 4241 of Title 18 governs the process by which district courts adjudicate mental competency to stand trial. Following a motion from either party or on their own motion, courts must order a hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Should the court find that the defendant is mentally incompetent, Section 4241(d) instructs the court to "commit the defendant to the custody of the Attorney General," after which the

> Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

18 U.S.C. § 4241(d). The Attorney General may then maintain custody of the defendant until either they are restored (if there is "substantial probability" that restoration is possible in the "foreseeable future") or the pending charges are disposed of. *Id.*

Neither the Supreme Court nor the Seventh Circuit have addressed the issue of whether a defendant's due process rights are violated by detention of this length following a commitment order or what the appropriate remedy would be in such a circumstance. Thus, this Court is without binding precedent on the matter. As such, the Court will undergo a review of the approaches of out-of-circuit courts to this issue.

This issue has most notably been addressed by the Ninth Circuit in *United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022). In *Donnelly*, the Ninth Circuit analyzed whether a defendant's due process rights were violated where the defendant had been held eight months before hospitalization under a Section 4241 commitment order. *Id.* at 1108. The court first noted that the four-month time limit in Section 4241 runs only when the defendant is receiving treatment and does not apply to pre-hospitalization confinement, and the court questioned whether the statute allowed any pre-hospitalization confinement at all. *Id.* at 1105. The court then analyzed *Jackson v. Indiana*, 406 U.S. 715 (1972). In *Jackson*, the Supreme Court had held that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed" and that a defendant "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738.

The *Donnelly* court held that, though they declined to find a bright line rule regarding whether or when pre-hospitalization commitment becomes unreasonable, the "reasonable relation" requirement of *Jackson* applies, and the eight-month delay "falls outside any constitutional reading of [§ 4241]." 41 F.4th at 1105. The court stated that the length of pre-hospitalization commitment can be only to "identify an appropriate treatment facility and arrange for the defendant's transportation to that facility," and held that that length cannot "last longer than the maximum time Congress permitted for the period of hospitalization itself." *Id.* at 1106.

Having decided that the defendant's due process rights were violated because the delay in transport was greater than four months, the court then determined the appropriate remedy. *Id.* The court did not require dismissal and instead remanded with "instructions to order the Attorney

General to hospitalize Donnelly in a suitable facility within seven days" because "[u]ltimately, both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize Donnelly without further delay." *Id.* at 1107.  The court then emphasized that "nothing in our decision today forecloses the possibility that dismissal may become appropriate at a future date." *Id.*  Notably, the court did not address whether the district court's prior order holding the defendant pre-trial under Section 3142 had any effect on whether his due process rights were violated or on the appropriateness of dismissal as a remedy.

Mr. Raja notes the approach in *Leusogi*, where the district court for the District of Utah agreed with the analysis of the Ninth Circuit regarding whether there was a violation where the defendant had been adjudged to be incompetent but, approximately five months following the commitment order, had not been transferred to a facility for treatment by the Attorney General. 2022 WL 16855426 at *1–2.  The court determined that dismissal was, however, the appropriate remedy.  *Id.*  In that case, Dr. Boutwell had submitted a declaration estimating that the defendant could not be admitted by the BOP for approximately an additional three months.  The court found that the defendant's months long detention awaiting transport implicated his due process rights and impeded judicial efficiency.  *Id.* at *3.  The court also found it important that the Government had violated a prior order to transport the defendant within seven days and that it had been warned that dismissal may be appropriate should it fail to do so.  *Id.*  Lastly, the court found that no lesser sanction would adequately address the wrong.  *Id.*

A review of other district court decisions on the subject demonstrates that defendants being held for an extended time after a commitment order has been a concern for district courts nationwide with courts coming to a variety of conclusions and issuing a wide range of orders since

7

the start of 2022. See *United States v. Castrellon*, 2023 WL 2330688 (D. Colo. Mar. 1, 2023) (declining to hold that a defendant's rights had been violated where the defendant had been held approximately five months after a commitment order and issuing an order that the Government remand the defendant to hospitalization while noting that, if this is not accomplished within approximately six weeks, the court would "strongly entertain dismissing the indictment"); *United States v. Ficklin*, 2023 WL 417405 (N.D. Miss. Jan. 25, 2023) (holding that a 100-day pre-hospitalization period of incarceration was insufficient to warrant dismissal); *United States v. Lee*, 2022 WL 18275882 (S.D. Fla. Dec. 27, 2022) (finding no violation of Section 4241 resulting from a five-month pre-hospitalization hold as the government's behavior was not "egregious or outrageous"); *United States v. McCall*, 2022 WL 19561433 (N.D. Ga. Dec. 12, 2022) (determining that dismissal of the indictment is not the appropriate remedy where eight months had passed since the commitment order but ordering prompt transport of the defendant with updates to the court ordered from the government and defense counsel every fourteen days); *United States v. Wazny*, 2022 WL 17363048 (M.D. Pa. Dec. 1, 2022) (holding that an eight-month delay in transportation following a commitment order exceeds a reasonable period of time and ordering that the government transport the defendant within 30 days to a suitable facility); *United States v. Carter*, 583 F. Supp. 3d 94 (D.D.C. 2022) (finding that the four-month time limit for restoration determination begins to run at the issuance of the commitment order and ordering dismissal in spite of the court's concerns regarding the defendant's danger to the community although holding the dismissal order in abeyance to allow time for the government to pursue civil commitment).

      This Court agrees that, under *Jackson*, the amount of time a defendant is held after a commitment order cannot be indefinite and must bear a reasonable relation to the purpose of the commitment. 406 U.S. at 738. In considering what constitutes a reasonable relation to the purpose


of Mr. Raja's incarceration, the Court determines it would be eminently reasonable for the Government to expend time ascertaining the best facility for Mr. Raja's restoration, completing paperwork, and physically transporting him safely before the four-month statutory time period begins to run.  However, this wait where Mr. Raja remains no better than twenty-second in line after an eight-month wait demonstrates that the Government has failed to provide a process by which incompetent defendants have access to the statutorily-mandated restoration services within a reasonable time.

The Government asks the Court to consider this delay to be reasonable because the U.S. Attorney's Office, the U.S. Marshal Service, and the BOP have worked diligently to transport Mr. Raja and intend to do so as soon as possible given the constraints of available beds and personnel.  However, while the fault may not lie with the U.S. Attorney's Office in this District, the U.S. Marshal, or with the BOP, and the Court is sympathetic to these public servants simply doing their best with limited resources, the Court cannot excuse due process violations based on these considerations.  While the Court here, like the Ninth Circuit in *Donnelly*, declines to draw a bright-line rule limiting the time a defendant may stay in custody before transport to a restoration facility by the Attorney General, it is clear that the now nearly nine-month wait that Mr. Raja has endured (let alone the wait to which he would be subject to if he remains in custody without transport until November 2023) is longer than a wait that bears a reasonable relation to the purpose of his detention.

The next issue the Court must address is whether issuing a remedy is appropriate based on other factors in this case.  The Government asks the Court to consider two factors weighing against court intervention: 1) that Mr. Raja has contributed to the delay in trial by asking for or not opposing continuances, and 2) that he has been held prior to the competency determination under

Section 3142. The Court rejects consideration of either of these factors in formulating a remedy. First, though Mr. Raja has contributed to some delay in his case overall, he has not contributed to the delay at issue here. Not only did both continuances occur before an adjudication on competency, but Mr. Raja has not been shown to contribute to his extended hold in any manner since the commitment order was entered. Second, the current hold is separate and distinct from any hold entered under Section 3142. That section allows the court to detain defendants "*pending trial*," but, due to Mr. Raja's incompetency determination, no trial is pending at this time and in fact cannot constitutionally take place. 18 U.S.C. § 3142(a) (emphasis added). The only hold relevant to the time since this Court's commitment order is the hold issued in that order.

Finally, the Court must determine the appropriate remedy for Mr. Raja's extended commitment in violation of due process. While Mr. Raja requests that the Court dismiss his Indictment, the Government urges the Court against such a remedy arguing that a consensus among other courts, including the court in *Leusogi*, is to issue instead an order with a deadline of a certain date for transport to a suitable facility. The Government contends that issuing such an order is required before dismissal becomes warranted because, without it, there is no order in place that the Government has violated.

The Court agrees that dismissal at this stage is harsh, and as requested, the Government should have one final opportunity to transport Mr. Raja. The lesser remedy provided by nearly every district court including the District of Utah in *Leusogi* as well as by the Ninth Circuit in *Donnelly* compelling the Government to transport the defendant within a certain amount of time is appropriate here. Therefore, the Court **orders** the Government to transport Mr. Raja to a suitable facility within **thirty (30) days** of the date of this Order. The Government is cautioned that, should it fail to comply with this Order, dismissal is likely warranted.

The Court holds that the delayed transportation to a suitable facility has amounted to a due process violation. However, because a lesser remedy than dismissal is warranted, Mr. Raja's Motion to Dismiss Indictment is **DENIED**.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Raja's Motion to Dismiss Indictment (Filing No. 83). The Court **Orders** the Government to transport Mr. Raja to a suitable facility pursuant to the Court's August 25, 2022 Entry on Defendant's Motion to Determine Competency (Filing No. 71) within **thirty (30) days** of the date of this Order. If no transfer is effectuated by that date, Mr. Raja's counsel should file the appropriate Notice and a Proposed Order of Dismissal for the Court's signature.

**SO ORDERED.**

Date: 5/17/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James H. Voyles
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jvoyles@voyleslegal.com

Jeffrey A. Baldwin
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jbaldwin@voyleslegal.com

Jayson W. McGrath
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jayson.mcgrath@usdoj.gov